UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


RICHARD LANGSTON                    :
                                    :                    PRISONER
        v.                          :        Case No. 3:08-cv-410(DJS)
                                    :
WARDEN MURPHY, ET AL.               :


**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Richard Langston, an inmate confined at the MacDougall-Walker Correctional Center in Suffield, Connecticut, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for robbery in the first degree, commission of a felony with a firearm and criminal possession of a firearm.  For the reasons that follow, the petition should be denied.

**I.   Factual Background**

Based on the evidence introduced at trial, the jury reasonably could have found the following facts.  On March 4, 1998, at approximately 1:30 a.m., Richard Middleton and Douglas Shorter were passengers in a vehicle driven by Richard Middleton's sister, Renee Middleton.  Douglas Shorter was Renee Middleton's boyfriend at the time.  They drove to Garden Street in Hartford to buy crack cocaine.  After Ms. Middleton parked the car, Mr. Middleton and Mr. Shorter exited the vehicle and approached two African-American males in a parking lot near the intersection of Albany Street.

Mr. Shorter recognized the petitioner as one of the two African-American males.  Mr. Middleton asked the petitioner and his companion whether they were selling crack cocaine.  The petitioner asked Mr. Middleton to hold on a minute and ran to a car on the left side of the parking lot, reached beneath the car, and retrieved an object.  During this time, the petitioner's companion asked Mr. Middleton to show him his money.

When the petitioner returned from the car, he opened his jacket to display a handgun that was tucked in his waistband, told Mr. Middleton that he looked like an individual who had robbed him and demanded that Mr. Middleton give him the money. At that point, Mr. Shorter turned and began walking back to the car driven by Ms. Middleton.  Mr. Middleton then gave the petitioner five twenty dollar bills, turned around and began to walk away.  Mr. Middleton heard two gun shots and a bullet struck him in the back of the knees.  Mr. Shorter than ran back to the car that Ms. Middleton was driving while Mr. Middleton hopped back to the car.

Mr. Shorter testified that he saw the petitioner pull a gun from his waistband and shoot Mr. Middleton.  Neither Mr. Middleton nor Ms. Middleton saw who fired the shots at Mr. Middleton. After Mr. Middleton got into the back seat of the car, Ms. Middleton drove Mr. Middleton and Mr. Shorter to St. Francis Hospital.  At the hospital, Mr. Middleton was treated for a

gunshot wound to his left leg and knee cap.  Mr. Middleton remained in the hospital for four days.

Three days after Mr. Middleton left the hospital, Hartford Police detectives went to Mr. Middleton's home and showed him a photo array of eight photographs of similar looking African-American males.  Mr. Middleton selected the petitioner's photograph as depicting the person who had robbed him and who he believed had shot him.  The detectives showed Mr. Shorter the same photo array and he selected the petitioner's photograph as depicting the person who had robbed and shot Mr. Middleton.  At trial, Mr. Middleton positively identified the petitioner as the individual who had robbed him, and Mr. Shorter positively identified the petitioner as the individual who had robbed and shot Mr. Middleton.

Hartford Police Officers obtained a warrant for the arrest of the petitioner based on their investigation and the positive identifications of Mr. Middleton and Mr. Shorter.  On March 24, 1998, Hartford and East Hartford Police Officers went to a residence in East Hartford where the petitioner was allegedly living with his girlfriend and executed the arrest warrant.  An East Hartford Police Officer placed the petitioner under arrest and took him into custody.

The petitioner's girlfriend permitted the officers at the scene to enter her apartment and search it.  In the course of the

-3-

search, one of the officers found a potato wrapped in black electrical tape with a hole carved in one end.  After being advised of his rights, the petitioner identified this object as a silencer that was used with a handgun.  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. R, Trial Transcripts.

## II.  Procedural Background

Pursuant to the petitioner's arrest on March 24, 1998, the Assistant State's Attorney for Connecticut Superior Court for the Judicial District of Hartford, Geographical Area 14 filed a long form Bill of Particulars charging the petitioner with one count of assault in the first degree in violation of Connecticut General Statutes § 53a-59, one count of robbery in the first degree in violation of Connecticut General Statutes § 53a-134, one count of the commission of a class A, B, or C felony with a firearm in violation of Connecticut General Statutes § 53-202k and one count of criminal possession of a firearm in violation of Connecticut General Statutes § 53a-217.  On May 25, 1999, a jury found the petitioner not guilty of assault in the first degree, but guilty of all the remaining charges.  On June 30, 1999, a judge sentenced the petitioner to a term of imprisonment of twenty-five years.

On direct appeal, the petitioner claimed that the trial court had erred and violated his right to the effective assistance of counsel when it denied him the right to argue a

*Secondino*[1] inference during closing arguments.  The Connecticut Appellate Court affirmed the convictions in a *per curiam* decision and the Connecticut Supreme Court denied certification to appeal further.  *See State v. Langston*, 67 Conn. App. 903 (2001).

On April 29, 2002, the petitioner filed a petition for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of New Haven.  In October 2003, the petitioner filed a second amended petition asserting numerous instances of ineffective assistance of counsel.  *See* Mem. Opp'n Pet. Writ Habeas Corpus, App. K, Second Amended Petition.

At a hearing held in October 2004, the trial court dismissed multiple claims. On March 29, 2005, the court granted the second amended petition as to the claims that trial counsel improperly conceded the guilt of the petitioner as to the robbery charge and the claim that trial counsel failed to file a motion in limine to preclude evidence of the potato silencer.

The state raised two issues on appeal.  It argued that the habeas court had erred in concluding that the petitioner had met his burden of demonstrating trial counsel's ineffectiveness on the basis of his failure to object to the potato silencer and the

---

[1]  In *Secondino v. New Haven Gas Co.*, 147 Conn. 672, 675 (1960), the Connecticut Supreme Court held that "[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause."

habeas court had erred in concluding that the petitioner had met his burden of demonstrating trial counsel's ineffectiveness on the basis of his closing arguments as to the robbery count. *See* Mem. Opp'n Pet. Writ Habeas Corpus, Apps. K and L, Notice of Appeal and Brief on Appeal.  On October 9, 2007, the  Connecticut Appellate Court reversed the judgment of the trial court. *See Langston v. Commissioner of Correction*, 104 Conn. App. 210 (2007).  On December 5, 2007, the Connecticut Supreme Court denied certification. *See Langston v. Commissioner*, 284 Conn. 941(2007).

## III. Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of

-6-

> the United States; or
>     (2) resulted in a decision that was based
> on an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).  That law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context. *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).  The state court decision must be more than incorrect; it also must be objectively unreasonable which is a substantially higher standard.  *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes

that the factual determinations of the state court are correct.
The petitioner has the burden of rebutting that presumption by
clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1);
*Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011)
(standard for evaluating state-court rulings where constitutional
claims have been considered on the merits is difficult to meet,
highly deferential, and demands that state-court rulings be given
the benefit of the doubt).  In addition, the federal court's
review under section 2254(d)(1) is limited to the record that was
before the state court that adjudicated the claim on the merits.
*See Id.*

## IV.  Discussion

The petitioner challenges his conviction on the ground that
trial counsel provided ineffective assistance of counsel when he:
(1) failed to file a motion in limine prior to trial and failed
to object during trial to evidence of a handgun silencer made
from a potato that was found by police at the time of the
petitioner's arrest and (2) conceded during his closing argument,
without the petitioner's prior knowledge or consent, that the
petitioner was guilty of participating in the robbery.  *See* Pet.
Writ Habeas Corpus at 9.[2]  The respondent argues that the

---

[2]  The petition includes a second ground for relief, but the
court deemed the second ground for relief to have been withdrawn
as of July 31, 2008.  (*See* Orders, Docs. Nos. 6, 15.)  Thus, the
petition proceeds only as to the first ground for relief.

petition should be denied because the state court decisions on these issues were neither contrary to nor an unreasonable application of clearly established federal law.

## A.   Failure to Object to Testimony Regarding Silencer

At trial, a detective testified that the search of the residence where the plaintiff was located at the time of his arrest revealed a potato with black electrical tape on it.  In response to questioning by another officer, the petitioner stated that the potato was a silencer for a handgun.  The petitioner contends that his trial attorney was ineffective in failing to file a motion in limine or object to any reference to the potato silencer.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail, the petitioner must demonstrate, first, that counsel's conduct fell below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. *Id.* at 687-88.  Counsel is presumed to be competent.  The petitioner bears the burden of demonstrating unconstitutional representation.  *See United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the trial]." *Strickland*, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005).  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing this claim, the state court identified the standard established in *Strickland* as the applicable law and applied that standard to the facts. *See Langston*, 104 Conn. App. at 212-19. Because the state court applied the correct legal standard, the state court decision is not contrary to federal law.  Accordingly, this court will consider whether the Connecticut Appellate Court reasonably applied the law to the facts.

The Connecticut Appellate Court found the following facts:

> At the petitioner's criminal trial, the prosecutor called Juan Roman, a detective with the Hartford police department, to testify about the petitioner's arrest. According to Roman, the petitioner was arrested at his residence in East Hartford. The petitioner and his female companion, who shared the residence, both gave the officers

-10-

permission to search the apartment. One of
the officers found a round object bound with
black electrical tape. The round object was
determined to be a potato. A police sergeant
who accompanied Roman asked the petitioner
what the object was. The petitioner responded
that it was a silencer for a handgun and that
he had seen something like it on television.
In his amended petition for a writ of habeas
corpus, the petitioner alleged that defense
counsel's representation was ineffective
because he failed to object to or move to
strike Roman's testimony about the potato
silencer because the testimony was irrelevant
and remote.

*Id.* at 214-15(internal quotation marks omitted).

The Connecticut Appellate Court noted that the trial court

had relied on a Connecticut Supreme Court case, *State v. Acklin*,

171 Conn. 105 (1976), in concluding that trial counsel had been

ineffective in failing to file a motion in limine or to object to

the testimony or evidence regarding the seizure of the potato

silencer during the petitioner's arrest.  In *Acklin*, the

Connecticut Supreme Court held that the trial court erred in

admitting into evidence stocking masks and ropes seized at the

time the defendants were arrested, because they did not establish

a fact in issue or corroborate other direct evidence in the case.

*See id.* at 114-16.  The habeas judge determined counsel should

have been aware of the long-standing rule set forth in *Acklin*

regarding the admissibility of evidence tending to prove other

crimes and that the potato silencer could have been excluded on

relevancy grounds if counsel had filed a motion in limine or

-11-

objected to the admission of that evidence at trial.  The habeas judge then concluded that trial counsel's failure to file a motion in limine or object to the evidence regarding the potato silencer fell below the standard of reasonable competence.

Thus, although the claim was one of ineffective assistance of counsel, the habeas court resolved the issue based on an interpretation of state evidentiary rules regarding the admissibility of evidence on relevancy grounds.  The Connecticut Appellate Court determined that the habeas court's reliance on *Acklin* was misplaced, as the evidence in the petitioner's case was both relevant and admissible.  The testimony regarding the potato silencer was relevant to the petitioner's possession of a gun which was an element of two of the crimes with which the petitioner was charged.  The Appellate Court concluded that had defense counsel moved to exclude or objected to the testimony regarding the potato silencer, the trial judge would very likely have denied such a motion or overruled such an objection. Because trial counsel was not obligated to pursue unmeritorious claims, his decision not to challenge the testimony as to the potato silencer did not fall below an objective standard of reasonableness. *See Langston*, 104 Conn. App. at 218.

This court concludes that the appellate court's decision was an objectively reasonable application of the *Strickland* standard. The petition for writ of habeas corpus is denied on this ground.

**B.    Concessions by Counsel During Closing Argument**

The petitioner argues that during closing argument, his attorney conceded that he had committed one of the crimes with which he was charged, robbery in the first degree.  The petitioner contends that this strategy was not something counsel discussed with him or that he agreed to prior to the closing argument.

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 701-02 (2002); *Herring v. New York*, 422 U.S. 853, 865 (1975)).  "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."  *Id.* at 5-6. Although summations should "sharpen and clarify the issues for resolution by the trier of fact, . . . which issues to sharpen and how best to clarify them are questions with many reasonable answers." *Id.* at 6 (internal quotation marks and citation omitted).

In analyzing this claim, the Connecticut Appellate Court applied the standard established in *Strickland*. *See Langston*, 104 Conn. App. at 212-14,219-24.  Because the state court applied the correct legal standard, the state court decision is not contrary

-13-

to federal law.  Accordingly, this court will consider whether the Connecticut Appellate Court reasonably applied the law to the facts.

The Connecticut Appellate Court reviewed the closing argument of petitioner's trial counsel and determined that counsel's theory of defense was to cast doubt on the credibility of the victim and his friend who had identified the petitioner as the individual who had robbed and attempted to shoot the victim. The Appellate Court noted that trial counsel had focused on the credibility of the victim and his friend, who were convicted felons, by noting that they had visited several places in search of drugs the night of the robbery and shooting, bought and used dangerous addictive drugs on a regular basis, were not sure of what they saw because it was dark and had likely chosen the petitioner from the photo array because they knew him or had recognized him from a prior encounter or encounters with him.  In addition, counsel emphasized that there was no testimony that on the night in question the area where the alleged robbery and shooting took place was flooded in light and that the police had never recovered the gun used to shoot the victim.  *See Langston*, 104 Conn. App. at 219-22.

The Appellate Court observed that the habeas court's characterization of trial counsel's closing argument strategy as a concession of guilt was misplaced.  The Appellate Court

-14-

determined that counsel had in fact utilized a rhetorical argument "intended to highlight for the jury the lack of logic with respect to the robbery and the shooting, i.e. if the victim had given his money to the petitioner and was retreating, why would the petitioner then shoot the victim." *Id.* at 223.  After considering the challenged parts of the closing argument in the context of the entire closing argument, as well as the evidence presented at trial, including the direct and cross-examination of witnesses, the Appellate Court concluded that trial counsel had not conceded the guilt of the petitioner as to the robbery charge. *Id.* at 224.  Thus, counsel's performance during his closing argument did not fall below the objective standard of reasonable professional assistance.  The Appellate Court's determination that the petitioner had not met the first prong of the *Strickland* standard was not an unreasonable application of Supreme Court law.  The petition is denied as to this claim of ineffective assistance of counsel.

## V.   Conclusion

The Petition for Writ of Habeas Corpus [**Doc. No. 1**] is **DENIED**.  The court concludes that the petitioner has not demonstrated the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue.  The Clerk is

directed to enter judgment and close this case.

      **SO ORDERED** at Hartford, Connecticut, this 1st day of March, 2012.


_____/s/ DJS_____
Dominic J. Squatrito
United States District Judge